IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LUIS VALENZUELA RODRIGUEZ,

          Plaintiff,                 No. 2:08-cv-1028 GEB AC P

     vs.

JAMES TILTON, *et al.*,

          Defendants.         <u>ORDER</u>

_____/

        Plaintiff is a prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is a motion to sever (titled "motion to dismiss misjoined defendants and claims") pursuant to Federal Rule of Civil Procedure 20(a) and (b).  This motion is filed by defendants Storey, Galloway, Davis, Valavia, Peiri, Smith, Zeibert, Duclos, Hamilton, Santos, Chavez, Linde, Bueno, Wholler, Brimhall, Johnson, Powell, Taylor, Rodgers, Molin (sued as "Mullen"), Ayers (sued as "Tucker"), and Reyes (collectively, "the moving defendants").  Plaintiff opposes the motion.  On review of the motion, the documents filed in support and opposition, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

////

FACTUAL ALLEGATIONS

The operative 55-page third amended complaint ("TAC") spans a period of three years and names in excess of forty defendants. On review, the court has filtered the factual allegations[1] down to the following discrete events:

A.   Onset of Plaintiff's Illness and Subsequent Diagnosis

On August 28, 2006, while housed in the Administration Segregation Unit ("Ad-Seg") at Mule Creek State Prison ("MCSP"), plaintiff fell ill and sought medical attention from defendants Medical Technical Assistants ("MTA") Santos and Pieri. TAC ¶¶ 20-22. Despite numerous requests to these MTAs for medical attention and despite a continuing deterioration of his symptoms, Santos and Peiri acted only by directing plaintiff to fill out a medical request slip. Id. ¶¶ 23-24. After plaintiff filled out the medical request slip, he reported to the MTA clinic door in the hopes of receiving medical attention, but was again turned away by Santos and Pieri, who informed plaintiff that he was not yet scheduled to be seen. Id. ¶¶ 25-26. Plaintiff's symptoms worsened daily, and he repeatedly asked Santos and Pieri to be seen by a doctor, but each time his request was denied. Id. ¶¶ 27-28.

In the evening of August 31, 2006, Santos and defendant RN Tucker arrived at plaintiff's cell to deliver his heart and blood pressure medication. TAC ¶ 31. When plaintiff complained of extreme pain, Santos and RN Tucker said they could not do anything for plaintiff other than ensure that he would be on the RN list for the next morning. Id. ¶ 32. Relying on the statements of Santos and RN Tucker, plaintiff went to the MTA clinic door the next morning only to find that his name was not on the RN list; he was turned away. Id. ¶ 33.

Plaintiff returned to the MTA clinic door the following day, September 1, 2006, only to be turned away again. TAC ¶ 34. Plaintiff, however, refused to leave because of

---

[1] The court did not include allegations against named defendants that have been dismissed by prior court orders. See ECF Nos. 34, 36. Additionally, the court found no charging allegations as to defendant Davis.

1 spreading pain and paralysis.  Id. ¶¶ 35-38.  He was eventually seen by defendant RN Taylor,

2 whom plaintiff accuses of failing to examine him properly, misdiagnosing him with a neck

3 sprain, and giving him unnecessary medication.  Id. ¶¶ 38-45.

4       On the evening of September 4, 2006, plaintiff went "man-down."  TAC ¶ 47.

5 Plaintiff was taken to the prison infirmary where he was seen be RN Tucker.  Id.  Following

6 examination, RN Tucker stated that she could only give him a shot of "toridol" and provide him

7 with a ducat to see a doctor the following morning.  Id. ¶ 48.

8       The next morning, on September 5, 2006, plaintiff attempted to return to the

9 MTA clinic to be seen by a doctor, but went "man-down" on the way there.  TAC ¶¶ 51-55.

10 Prison personnel refused to assist him, so plaintiff was assisted by other inmates and finally

11 made it to his appointment.  Id.  At the MTA clinic, plaintiff was seen by defendant Dr.

12 Galloway, who informed plaintiff that he was at "a point of life or death" and that he "could die

13 at any moment."  Id. ¶¶ 56-57.  Plaintiff was immediately transported to Doctor's Hospital in

14 Manteca ("DHM").  Id. ¶ 59.

15 B.    Outside Treatment and Rehabilitation

16       While at DHM, plaintiff was diagnosed with a staphyloccocus aureus bacteria

17 infection in his blood, which created an epidural abscess along plaintiff's lower spine and spinal

18 cord.  TAC ¶ 60.  Plaintiff was transferred to the University of California, San Francisco Medical

19 Center ("UCSFMC") where he underwent extensive emergency surgery.  Id. ¶¶ 61, 66-71.

20 Because of the extent of damage caused by the bacterial infection to plaintiff's spine and nerves,

21 he underwent two months of rehabilitation to learn to walk again at Kentfield Hospital.  Id. ¶ 71.

22 Plaintiff also lost permanent control of his bowel and urinary processes.  Id. ¶ 72.

23       While at Kentfield Hospital, plaintiff was informed by a social worker that

24 arrangements were being made to release plaintiff back to MCSP.  TAC ¶ 94.  The social worker

25 spoke with defendant Jeannie Rodgers at MCSP to facilitate a "smooth transition back into the

26 prison setting via a prison infirmary."  Id.

1    C.    Return to MCSP

2          1.    Transfer to MCSP

3                On an unspecified date, plaintiff was released into the custody of defendant

4    MCSP Officer Valavia, who transported plaintiff in a sitting position in the back seat of a regular

5    transport car.  TAC ¶¶ 95-96.  This cause plaintiff great pain and discomfort and exacerbated the

6    swelling in his lower limbs.  Id.

7          2.    Temporary Placement in Ad-Seg

8                When plaintiff arrived at MCSP, he was informed that there were no available

9    spaces for him at the prison infirmary.  TAC ¶ 97.  Instead, plaintiff was placed in an unsanitary

10   cell in Ad-Seg despite directives from Kentfield Hospital that plaintiff be released to the prison

11   infirmary and be provided with 24-hour registered nurse assistance.  Id.

12               Immediately upon his return to MCSP, plaintiff was seen by defendant Drs.

13   Galloway and Smith, whom plaintiff accuses of downplaying his medical condition and failing

14   to provide the appropriate medical chronos.  TAC ¶ 99, 101-02.  Some of the chronos plaintiff

15   sought from these doctor defendants include: mobility assistance to help put on clothes,

16   assistance to sanitize plaintiff's living area, a mobility impairment vest, and a "cell feed" so that

17   plaintiff would not have to sit in the dining room with other inmates with feces in his diaper.  Id.

18   ¶ 103.  Without these chronos, plaintiff was required to beg others for clean diapers and was

19   forced to reuse disposable diapers several times a day.  Id. ¶ 110.

20               Plaintiff also accuses Drs. Galloway and Smith and RN Wholers of falsely

21   documenting that plaintiff's legs and feet were only "slightly swollen" when in fact they were

22   grotesquely swollen.[2]  TAC ¶ 100.

23   _____

24        [2]  In addition to these allegations, plaintiff accuses unidentified MCSP staff of cutting off
     his prescription medication while he was housed in Ad-Seg.  These individuals allegedly cut off
     plaintiff's antibiotic medication for four days, between November 9, 2006 and November 14,

25   2006. TAC ¶¶ 105-06.  Also, beginning on November 9, 2006 and continuing for "about a
     couple of weeks," unidentified MCSP medical staff did not give plaintiff prescribed medication

26   for pain management.  Id. ¶ 107.

3.     Placement in a Second Tier Cell

After plaintiff's temporary assignment in Ad-Seg, he was re-housed to the MCSP Facility A in a second tier cell. TAC ¶ 111. Plaintiff told MCSP Officers Micholetti[3] and Chavez that plaintiff had orders to be housed on a lower tier because of his recent spinal surgery and that walking up and down the stairs caused him great pain and resulted in a bowel movement every time he ascended or descended the stairs. Id. ¶¶ 112, 115. These officers responded with "we don't give a shit about any Doctor's orders, we're not moving you." Id. ¶¶ 113-14. Plaintiff also informed defendant MCSP Officer Mullen and Sergeant Linde of his second tier placement, the chrono, and the pain he was suffering, but these defendants told plaintiff to speak to Micholette and Chavez. Id. ¶ 116. Plaintiff remained in the second tier cell for approximately three weeks. Id. ¶ 115.

4.     The Unit Classification Committee

On November 22, 2006, plaintiff appeared before the Unit Classification Committee ("UCC"), which consisted of defendants Johnson, Hamilton, and two other persons. TAC ¶ 117. These defendants informed plaintiff that he was being placed on full-duty work assignment with "no medical concerns or restrictions" and on a 'support services' waiting list. Id. In shock, plaintiff informed these defendants of his recent spinal surgery, with its attendant mobility and medical problems and pain, and asked that he be "medically unassigned A1A status," be re-housed in a lower tier, and be granted single cell status. Id. ¶ 118. The UCC responded by stating that "[w]e cannot accept nor acknowledge any medical papers you have, and we don't have anything from medical stating anything about any medical concerns or issues that you are claiming." Id. ¶ 119. They also said that "[i]f feces drops in the cell and you can't reach it, your cellie can clean it up for you," and then told plaintiff that housing situations are left to the block officers because the UCC does not order cell moves. Id. Plaintiff accuses the UCC

_____

[3] Micholette, though named in the FAC, was dismissed by order dated November 22, 2010 for plaintiff's failure to state a claim. See ECF No. 36.

1   of retaliating against him for filing a citizen's complaint against Hamilton, Micholette, Chavez,

2   and others.  Id. ¶ 120.  Plaintiff remained housed on the second tier until on or about December

3   15, 2006.  Id. ¶ 121.

4         5.   Inmate Grievances

5         Plaintiff claims he filed numerous administrative complaints and ADA

6   accommodation requests with Santos, Pieri, Zeibert, and others, but responses were delayed

7   sometimes by as many as ninety days.  TAC ¶ 126.  Defendant Appeals Coordinator E.A. Reyes

8   was involved in these delays.  See id. ¶¶ 133, 156.

9         6.   MTA Zeibert

10        Plaintiff makes many allegations as to defendant MTA Zeibert.  During an

11  unspecified period of time, Zeibert harassed plaintiff and retaliated against him for unidentified

12  reasons.  TAC ¶ 125.  Zeibert also denied plaintiff necessary diapers and medical supplies and

13  forced plaintiff to retrieve diapers from the MTA clinic during morning hours when other

14  inmates would see and embarrass him.  Id.

15        On an unspecified date, Zeibert purportedly called Chavez to request that he

16  search plaintiff's cell and remove all of plaintiff's medical supplies except for three diapers, four

17  catheter tubes and four lubricants, and four antiseptic wipes.  TAC ¶ 127.  Some of the supplies

18  that were confiscated had just been issued to plaintiff by a nurse.  See id. ¶ 129.

19        One month after this incident, Zeibert falsified a California Department of

20  Corrections and Rehabilitation chrono claiming he did not tell Chavez to search plaintiff's cell

21  and confiscate items.  TAC ¶ 130.

22        Zeibert allegedly directed Dr. Hashimoto to limit plaintiff to three diapers and

23  four catheter tubes a day, and to deny rubber gloves, which plaintiff used to catheterize himself

24  to avoid infections.  TAC ¶¶ 131-32.  Zeibert also had Dr. Hashimoto write an order stating that

25  plaintiff may only pick up his medical supplies during the morning.  Id. ¶ 132.

26  ////

1          7.     Mental Health Requests

2                 On unspecified dates, plaintiff submitted requests for mental health intervention

3  because of the his treatment at MCSP.  TAC ¶¶ 136, 155.  Defendants clinical social worker

4  Anthony and Dr. Powell falsified documents in plaintiff's mental health file to claim that he had

5  a history of exaggerating symptoms.  Id.

6          8.     MTA Bueno

7                 Plaintiff accuses Sergeant Bueno and others of intentionally losing one box of

8  plaintiff's legal files.  TAC ¶ 154.

9                 Plaintiff accuses Sergeant Bueno and Officer Duclos of denying plaintiff his sack

10  lunch even though they knew that this was the only meal plaintiff ate due to his medical

11  condition.  See TAC ¶ 157.

12                 Plaintiff accuses Sergeant Bueno of retaliating against him for filing complaints

13  by issuing false disciplinary reports.  TAC ¶ 158.

14                 Plaintiff accuses Bueno of setting up a retaliatory cell block transfer.  TAC ¶ 159.

15          9.     Miscellaneous

16                 Plaintiff claims he filed citizen / staff complaints against MTA Zeibert, Chavez,

17  Micholette, Johnson, Hamilton, Peiri, Santos, Bueno, and others, concerning various, unspecified

18  acts of misconduct.  TAC ¶ 154.

19                 On a number of occasions between 2007 and 2009, defendant Storey refused to

20  provide plaintiff with catheters, diaper supplies, and pain medication.  TAC ¶¶ 168-69.

21                 Finally, plaintiff accuses the defendants in general of retaliating against him by

22  filing false reports and placing him in Ad-Seg without justification.  TAC ¶ 169.

23                        RELEVANT PROCEDURAL BACKGROUND

24                 Plaintiff initiated this action on May 12, 2008 and is proceeding on a third

25  amended complaint filed August 20, 2010 identifying 42 named defendants and a number of

26  John and Jane Doe defendants.  See ECF No. 32.  By order dated September 29, 2010, the

7

Honorable Barbara J. Rothstein screened the TAC and found service proper for defendants
Smith, Brimhall, Galloway, Santos, Peiri, Zeibert, Wholler, Tucker, Taylor, Hamilton, Johnson,
Bueno, Linde, Chaves, Duclos, Mullen, Powell, Anthony, Rogers, Valavia, Davis, Reyes, and
Storey.  On November 4, 2010, plaintiff filed a motion for reconsideration of the screening order,
arguing that the court improperly dismissed certain claims and defendants.  ECF No. 35.  On
review, the court denied plaintiff's motion as meritless and, in addition, dismissed three other
defendants whom the court failed to dismiss in its screening order, including defendant
Micholetti.  ECF No. 36.

        The defendants for whom service was deemed proper were served over an
extended period of time: some were served as early as January 12, 2011 (see ECF No. 47) while
others were served as late as February 28, 2012 (see ECF No. 117).  Accordingly, the
defendants' responsive pleadings were filed over a one-year period.  On March 10, 2011,
defendants Bueno, Chavez, Davis, Duclos, Gallaway, Hamilton, C. Johnson, Linde, Pieri,
Santos, Smith, Storey, Valavia, Wholler, and Ziebert filed an answer.  ECF No. 46.  On
September 16, 2011, defendant Brimhall filed an answer.  ECF No. 86.  On October 18, 2011,
defendant Anthony filed an answer.  ECF No. 98.  On November 21, 2011, defendants Powell,
Reyes, and Taylor filed an answer.  ECF No. 104.  Finally, on April 27, 2012, defendants
Mullen, Rogers and Tucker filed an answer.  ECF No. 116.  Because of these staggered filings,
the scheduling order in this case was modified multiple times.  See ECF Nos. 50, 63, 94, 123.
Ultimately, discovery ended as to all defendants on August 1, 2012 and dispositive motions were
due by October 30, 2012.  ECF No. 123.  Plaintiff was granted until December 1, 2012 to file
dispositive motions.  ECF No. 131.  He has not filed any such motion.

        On October 23, 2012, defendant Anthony filed a motion for summary judgment.
On October 24, 2012, the moving defendants filed the instant motion to sever.  As to the moving
defendants, the court granted their motion to reset the deadline for filing a motion for summary
judgment upon disposition of their motion to sever.

LEGAL STANDARDS

Under Rule 20(a)(2), permissive joinder of defendants is proper if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Rule 20(a)(2) is designed to promote judicial economy and trial convenience. See Mosley v. Gen. Motors, 497 F.2d 1330, 1332-33 (8th Cir. 1974). "The 'same transaction' requirement of Rule 20 refers to 'similarity in the factual background of a claim; claims that arise out of a systematic pattern of events' and have a 'very definite logical relationship.'" Hubbard v. Hougland, 2010 WL 1416691, at *7 (E.D. Cal. Apr. 5, 2010) (quoting Bautista v. Los Angeles County, 216 F.3d 837, 842-843 (9th Cir. 2000)). In addition, "the mere fact that all [of a plaintiff's] claims arise under the same general law does not necessarily establish a common question of law or fact." Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997).

However, "even once [the Rule 20(a) ] requirements are met, a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." Coleman v. Quaker Oats Company, 232 F.3d 1271, 1296 (9th Cir. 2000) (citing Desert Empire Bank v. Insurance Co. of North America, 623 F.2d 1371, 1375 (9th Cir. 1980) (finding that the district court did not abuse its discretion when it severed certain plaintiff's claims without finding improper joinder)).

Under Rule 20(b), the district court may sever claims or parties in order to avoid prejudice. Fed. R. Civ. P. 20(b). Courts have also exercised their discretion to sever where "[i]nstead of making the resolution of [the] case more efficient . . . joinder would instead confuse and complicate the issues for all parties involved." Wynn v. National Broadcasting Company, 234 F. Supp. 2d 1067, 1088 (C.D. Cal. 2002) (finding that even where Rule 20 requirements for joinder are satisfied, the Court may exercise its discretion "to sever for at least two reasons: (1) to prevent jury confusion and judicial inefficiency, and (2) to prevent unfair prejudice to the

1 [defendants]") (citing Coleman, 232 F.3d at 1296).

2       The proper remedy for misjoinder is to sever misjoined parties and dismiss claims

3 against them, provided that "no substantial right will be prejudiced by the severance."  Coughlin,

4 130 F.3d at 1350.

5 DISCUSSION

6       Defendants seek severance under Rule 20(a)(2) on the ground that plaintiff's

7 multiple claims do not arise "out of the same transaction, occurrence, or series of transactions or

8 occurrences" and do not involve a common question of law or fact, even though the events

9 identified in the TAC relate in one way or another to plaintiff's illness.  In asserting multiple

10 unrelated claims against different individuals, defendants contend that plaintiff presents the kind

11 of "mishmash of a complaint" that has been roundly repudiated.  George v. Smith, 507 F.3d 605,

12 607 (7th Cir. 2007) ("[u]nrelated claims against different defendants belong in different suits").

13 Fed. R. Civ. P. 18(a) provides: "A party asserting a claim, counter-claim, crossclaim, or third-

14 party claim may join, as independent or alternative claims, as many claims as it has against an

15 opposing party."  "Thus multiple claims against a single party are fine, but Claim A against

16 Defendant 1 should not be joined with unrelated Claim B against Defendant 2."  Smith, 507 F.3d

17 at 607.  "Unrelated claims against different defendants belong in different suits[.]"  Id.  "A

18 buckshot complaint that would be rejected if filed by a free person–say, a suit complaining that

19 A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E

20 infringed his copyright, all in different transactions – should be rejected if filed by a prisoner."

21 Id.

22       Alternatively, should the court find common questions of law or fact in the claims

23 alleged against the individual defendants, defendants seek severance under Rule 20(b) because

24 they argue that a single trial for the multiple events identified in the TAC has the potential to

25 confuse the jury, resulting in an unfair trial and/or prejudicing the defendants.  They argue that a

26 single trial would be prejudicial because of the substantial risk that each defendant would be

1  tainted by the presentation of evidence regarding the misdeeds of other defendants.

2

3          Plaintiff counters that he has satisfied the requirements of permissive joinder, that

4  he has attempted to submit a satisfactory pleading multiple times, that the court's orders have

5  been inconsistent[4], that his three requests for appointment of counsel have been denied, and that

6  any dismissal of claims and/or defendants would necessarily amount to a dismissal with

7  prejudice because of the expiration of the statute of limitations on his claims.

8          While the court is unpersuaded by  many of plaintiff's arguments in opposition,

9  plaintiff's last argument is well-taken.  Even if the court was inclined to find that severance is

10 appropriate under Rule 20(a), it may well be the case that granting defendants' motion would

11 prejudice plaintiff, who at this late date may be unable to file separate actions without facing

12

13          [4]          Plaintiff argues, for example, that the court's September 29, 2010 screening order
dismissed certain claims that it had previously deemed sufficient.  Plaintiff also argues that the
court in a November 22, 2010 order improperly dismissed  defendant Micholette and suggests
14 that he wishes to file a motion for reconsideration of that order.  See Pl.'s Mem. of P. & A. at 6.
Plaintiff, however, is now time-barred from filing a motion for reconsideration under the Federal
15 Rules of Civil Procedure.
          Assuming that the court construed plaintiff's opposition as a Rule 60(b) motion,
16 which may invoked to challenge final orders, plaintiff's motion would be denied as untimely
because a motion for relief under Rule 60(b)(1) for "mistake, inadvertence, surprise, or
17 excusable neglect" carries with it a one-year time period in which to file.  See Fed. R. Civ. P.
60(c)(1) ("A motion under Rule 60(b) must be made within a reasonable time – and for reasons
18 (1), (2), and (3) no more than a year after the entry of the . . . order . . . .").  The order from
which plaintiff seeks relief was entered on November 22, 2010.  Therefore, plaintiff had until
19 November 22, 2011 to file a motion.  Plaintiff did not file a motion during that time period.
          A motion under Rule 60(b)(6), which is not subject to the one-year limitation,
20 would also fail.  Rule 60(b)(6) provides "a mechanism for parties to seek relief from a[n order]
when 'it is no longer equitable that the [order] should have prospective application,' or when
21 there is any other reason justifying relief from [the order]." Jeff D. v. Kempthorne, 365 F.3d
844, 851 (9th Cir. 2004) (quoting Fed. R. Civ. P. 60(b)).  Relief under Rule 60(b)(6) requires a
22 party to "show 'extraordinary circumstances,' suggesting that the party is faultless in the delay."
Pioneer Inv. Services Co. v. Brunswick Associates Ltd., 507 U.S. 380, 393 (1993).  Such relief
23 "normally will not be granted unless the moving party is able to show both injury and that
circumstances beyond its control prevented timely action to protect its interests." United States
24 v. Alpine Land & Reservoir Co., 984 F.2d 1047, 1049 (9th Cir. 1993).  Here, there is nothing in
the record from which the court could determine that plaintiff was barred from bringing a timely
25 motion under Rule 60(b).  The court notes that plaintiff submitting numerous filings since the
order dismissing defendant Micholetti issued, and in none of these filings did plaintiff suggest
26 that the court erred in dismissing this defendant.

dismissal on timeliness grounds.  Although the doctrine of equitable tolling might in theory

provide some relief to plaintiff, this court cannot order its application in any future cases.  Thus,

defendants' motion must be denied under Rule 20(a).  This outcome is, of course, a direct result

of the defendants' extreme delay in filing the instant motion, which was brought nearly four and

a half years after this suit was filed and nearly two years after the majority of the moving

defendants (Bueno, Chavez, Davis, Duclos, Gallaway, Hamilton, Johnson, Linde, Pieri, Santos,

Smith, Storey, Valavia, Wholler, Ziebert) were served with the TAC.

As to defendants' request for dismissal pursuant to Rule 20(b), the court will deny

this motion without prejudice as premature.  Defendants have yet to file their motion for

summary judgment and the final claims and parties that will be at issue at trial have yet to be

determined.  If, after all dispositive motions have been decided, defendants believe that a single

trial would be prejudicial, they may refile their motion to sever and move the court to order

separate trials in the interest of justice.

Based on the foregoing, IT IS HEREBY ORDERED that defendants' motion to

sever is denied.  Defendants shall file their respective motions for summary judgment within

sixty days from the date of this order.

DATED: March 19, 2013.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/mb;rodr1028.sever

12